# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM PETAWAY,<br>    Plaintiff,<br><br>v.<br><br>CITY OF NEW HAVEN POLICE<br>DEPARTMENT, et al.,<br>    Defendants. | PRISONER<br>Case No. 3:06cv206 (SRU) |

## RULING ON PENDING MOTIONS

The plaintiff, William Petaway, filed this civil rights action pro se pursuant to 28 U.S.C. § 1915. He alleges *inter alia* that defendants City of New Haven, the New Haven Police Department, Sergeant Costin, Detective Fitzgerald and Officer Lamb, violated his constitutional rights when they arrested him in September 2003, but failed to arrange for his arraignment within the time prescribed under state law. The defendants have filed a motion for summary judgment. Petaway has filed two motions to dismiss, a motion to strike, a motion for sanctions and three motions seeking miscellaneous relief. I will address Petaway's motions first.

## I. Motions to Dismiss [docs. ## 54, 56]

Petaway seeks to dismiss the defendants' motion for summary judgment because he claims to have new evidence to support the allegations in the complaint regarding his arrest in September and arraignment in October 2003. In effect, Petaway seeks to strike the defendants' motion for summary judgment. Federal Rule of Civil Procedure 12(f) provides that a court may strike from "any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Neither a motion nor a memorandum is a pleading as defined in Rule 7(a) of the Federal Rules of Civil Procedure. Because the defendants' motion for summary judgment is

not a pleading, Petaway's motion to strike/dismiss is denied. The second motion to dismiss, which is actually a memorandum in support of the first motion to dismiss, is denied as moot.

**II.      Motions to Strike and for Sanctions [docs. ## 60, 63]**

Petaway seeks to strike Sergeant Direk Rogers' Affidavit because it refers to conduct that allegedly failed to comply with the requirements of certain Connecticut statutes. Federal Rule of Civil Procedure 56(e) states that affidavits filed in connection with a summary judgment motion "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Accordingly, "[a] court may ... strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements." Hollander v. Am. Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999).

The statements in the Rodgers Affidavit appear to be made based on his personal knowledge, are not conclusory, and do not contain hearsay. Accordingly, the motion to strike is denied.

Petaway seeks sanctions against Sergeant Roger Young because his affidavit includes a statement indicating that Petaway was not arrested on September 29, 2003. The affidavit contains no such statement. Petaway's motion in effect seeks to strike Young's Affidavit. I have already considered and ruled on Petaway's prior motion to strike Sergeant Young's Affidavit. On September 13, 2007, I granted the motion to strike with respect to paragraph 7(a) through (g). Petaway identifies no statements in the remainder of the Affidavit that are not made upon personal knowledge, or that contain hearsay or conclusory statements. Accordingly, the motion

for sanctions, which I construe as a motion to strike, is denied.

**III.     Motions for Miscellaneous Relief [docs. ## 57, 61, 69]**

Petaway seeks an order prohibiting defendants' counsel from filing a supplemental affidavit from Sergeant Young. On September 13, 2007, I issued a ruling striking portions the Affidavit of Sergeant Young submitted in support of defendants' motion for summary judgment. That ruling permitted counsel to file a supplemental affidavit. No supplemental motion has been filed. Petaway's motion to prohibit counsel from filing a supplemental affidavit is denied as moot.

Petaway asks the court to stay any ruling on his motions to dismiss until he receives documentation from an attorney in a state criminal case and can forward it to counsel for the defendants in this case. In view of the court's denial of Petaway's motions to dismiss, the motion for stay is also denied.

Petaway asks the court to rule on all of his pending motions. The motion is denied as moot.

**IV.     Motion for Summary Judgment [doc. # 40]**

The defendants move for summary judgment on five grounds. They argue that: (1) the false arrest and false imprisonment claims fail to state a claim upon which relief may be granted; (2) the Due Process claim fails to state a claim upon which relief may be granted; (3) the City of New Haven is not liable for the constitutional torts of its employees on a respondeat superior theory; (4) the court should decline to exercise jurisdiction over any state law claims; and (5) they are entitled to qualified immunity. Petaway has filed a memorandum in opposition to defendants' motion, his own affidavit and a Local 56(a)2 Statement.

3

### A. Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). The moving party may satisfy that burden by demonstrating the absence of evidence supporting the nonmoving party's case. See PepsiCo, Inc. v. Coca-Cola Co., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam). The court construes the facts in the light most favorable to the non-moving party. See Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ., 444 F.3d 158, 162 (2d Cir.), cert. denied, 127 S. Ct. 382 (2006).

When a motion for summary judgment is supported by documentary evidence and sworn affidavits, the non-moving party must do more than vaguely assert the existence of an unspecified disputed material fact or offer speculation or conjecture. See Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990). If the non-moving party does not respond to the motion, the court may accept as true the moving party's factual statements. See D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in [the moving party's Rule 56(a)1] statement will be deemed admitted unless controverted . . . ."). Even if the motion is unopposed, however, the court will not grant summary judgment unless it determined that the moving party is entitled to judgment as a matter of law. See Vermont Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 242 (2d Cir. 2004).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Despite this liberal interpretation, however, a "bald assertion,"

4

unsupported by evidence, cannot overcome a properly supported motion for summary judgment. Carey v. Crescenz, 923 F.2d 18, 21 (2d Cir. 1991).

**B.	Facts**[1]

On August 11, 2003, New Haven Police Officer Tammi T. Lamb, n/k/a Tammi T. Means, responded to a complaint of a domestic dispute at 36 Asylum Street in New Haven, Connecticut involving Petaway and the mother of Petaway's child. Petaway was not at the address when Officer Means arrived. Based on allegations made by the mother of Petaway's child, a radio broadcast was put out to apprehend Petaway on charges of breach of peace in the second degree and threatening in the second degree. Within forty-eight hours of the incident, Officer Means applied for an arrest warrant for Petaway on those charges. A Superior Court Judge issued the arrest warrant. Officer Means had no other involvement with Petaway after she applied for the warrant for his arrest.

On September 20, 2003, an armed robbery occurred at a gas station on Willow Street in New Haven, Connecticut. Detective Theodore Fitzgerald of the New Haven Police Department was assigned to conduct a follow-up investigation of the robbery. On September 23, 2003, he learned information suggestive of Petaway's involvement in the robbery and subsequently learned that Petaway was out on parole and that the arrest warrant issued for the breach of peace and threatening remained outstanding. William Griffin was Petaway's parole officer in September 2003. Thus, in September 2003, Petaway was under the jurisdiction of the Connecticut Board of Parole.

---

[1] The facts are taken from defendants' Local Rule 56(a)1 Statement [doc. #40-3] along with the Affidavits attached to their Local Rule 56(a)1 Statement [doc. #40-4], Petaway's Local 56(a)2 Statement and attached exhibits [doc. # 59-2] and Petaway's Affidavit [59-3].

5

On September 29, 2003, Petaway met with Officer Griffin at the Parole Office. Officer Griffin issued a Remand to Custody Order for Petaway for violation of his parole and contacted Detective Fitzgerald and Sergeant Costin of the New Haven Police Department to inform them that Petaway was at his office. That same day, Detective Fitzgerald and Sergeant Costin picked Petaway up at the Parole Office on the outstanding arrest warrant and the Remand to Custody Order issued by Officer Griffin and transported him to the New Haven Department of Police Service located on Union Avenue in New Haven. Upon his arrival at the police department, Detective Fitzgerald presented him with a New Haven Police Department Rights form. Petaway stated that he understood the form and that he was willing to speak to the police. He was then interviewed about the robbery at the gas station. Later that day, officers escorted the Petaway to the New Haven Correctional Center located next door.

Due to inadvertent delays involving the personnel at the Records Division of the New Haven Department of Police Service and the booking officer at New Haven Correctional Center, the arrest warrant for breach of peace and threatening was not promptly served on Petaway. On October 29, 2003, Petaway was brought to Superior Court so that police officials could serve Petaway with the warrant for his arrest on the breach of peace and threatening charges. Petaway was arraigned on the breach of peace and threatening charges that same day.

A sergeant in the New Haven Department of Police Service signed the return on the arrest warrant on the charges of breach of peace and threatening and filled out the Uniform Arrest Report listing Officer Lamb as the arresting officer. The sergeant listed Officer Lamb as the arresting officer because she initiated the arrest by applying for the warrant and was the officer who had knowledge of the underlying facts of the August 2003 incident and charges against

6

Petaway.

**C.     Discussion**

Petaway names the New Haven Police Department as a defendant in the caption of the complaint, but does not otherwise describe or make allegations against the police department anywhere else in the complaint. The only other reference to the New Haven Police Department is in the relief section of the complaint in which Petaway seeks an order directing the police department to correct the arrest date on all records relating to a state criminal case.

Although a municipality is subject to suit pursuant to 42 U.S.C. § 1983, see Monell v. Department of Social Services, 436 U.S. 658, 690 (1978), a municipal police department is not. A municipal police department is a sub-unit, agency or instrumentality of the municipality through which the municipality fulfills its policing function. See Cowras v. Hard Copy, Case No. 3:95cv99 (AHN), slip op. at 25 (D. Conn. Sept. 29, 1997). Thus, a municipal police department is not subject to suit under section 1983 because it is not an independent legal entity. See id.

Nor is a municipal police department considered to be a "person" within the meaning of section 1983. See, e.g., Dean v. Barber, 951 F.2d 1210, 1215 (11th Cir. 1992) (affirming district court's dismissal of claims against county sheriff's department because, under state law, sheriff's department lacked capacity to be sued); Orraca v. City of New York, 897 F. Supp. 148, 151-52 (S.D.N.Y. 1995) (holding police department and police precinct not entities that could be sued under section 1983); PBA Local No. 38 v. Woodbridge Police Dep't, 832 F. Supp. 808, 825-26 (D.N.J. 1993) (citing cases to support statement that courts considering this issue have unanimously concluded that municipal police departments are not proper defendants in section

7

1983 actions). Because a municipal police department is not considered to be a municipality or a person within the meaning of section 1983, the claims against the New Haven Police Department are dismissed for failure to state a claim upon which relief may be granted. See 28 U.S.C. § 1915(e)(2)(B)(ii).

1.  **Claims Against Officer Lamb a/k/a Means**

Petaway asserts that on October 29, 2003, Officer Means prepared and issued an inaccurate Uniform Arrest Report detailing his arrest on the charges of breach of peace and threatening, failed to fingerprint him and failed to take his photograph and was not present at his arraignment. Defendant Means has filed an affidavit including statements that she had no contact with Petaway after she applied for the arrest warrant for the August 2003 incident, did not take him into custody, did not serve or execute the arrest warrant on him. In addition, the defendants have filed the affidavit of another officer who in fact prepared the Uniform Arrest Report and signed the return on the arrest warrant. Petaway has presented no evidence to contradict those affidavits. Accordingly, the motion for summary judgment is granted with respect to all claims against Officer Lamb a/k/a Means.

2.  **False Imprisonment Claim**

Petaway alleges that Detectives Costin and Fitzgerald arrested him on September 29, 2003 on the breach of peace and threatening charges, but failed to serve a copy of the arrest warrant on him, sign the return on the warrant or complete a Uniform Arrest Report. He contends that he was not arraigned on the breach of peace and threatening charges until October 29, 2003. Thus, he argues that he was illegally detained from September 30, 2003 until October 29, 2003. He contends that unauthorized detention constitutes false imprisonment.

The United States Court of Appeals for the Second Circuit has held that state law controls the elements of a claim for false imprisonment. See Russo v. City of Bridgeport, 479 F.3d 196, 204 (2d Cir. 2007). Connecticut law defines false imprisonment as "the unlawful restraint by one person of the physical liberty of another." Binette v. Sabo, 244 Conn. 23, 63, 710 A.2d 688 (1998) (internal quotation marks omitted). It is well-established that probable cause is a complete defense to claims of false imprisonment and false arrest. See Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004). The issuance of a facially valid warrant by a neutral magistrate creates a presumption of the existence of probable cause that can only be overcome by presenting evidence that the officer knowingly and recklessly made a false statement in his affidavit or omitted material information clearly critical to the probable cause determination. Golino v. New Haven, 950 F.2d 864, 871 (2d Cir. 1991). Here, Petaway does not challenge the validity of the warrant that was issued for his arrest on breach of peace and threatening charges. Rather, he claims that his 29-day detention constitutes false imprisonment because he should have been arraigned on the charges in the warrant the day after his arrest. See Conn. Gen. Stat. § 54-1g(a) ("Any arrested person who is not released sooner . . . shall be promptly presented before the superior court sitting next regularly for the geographical area where the offense is alleged to have been committed.").

Defendants argue that Petaway ignores the fact that, during the time he claims to have been falsely imprisoned pursuant to the charges for breach of peace and threatening, he was in custody pursuant to the Remand to Custody Order issued by his parole officer on a violation of his parole. Petaway does not contest that his Parole Officer issued a Remand to Custody Order on September 29, 2003, authorizing his return to the custody of the Department of Correction for

9

violating his parole. Under Connecticut General Statutes § 54-127, "[t]he request of . . . the Board of Pardons and Paroles or its chairman shall be sufficient warrant to authorize . . . any officer authorized by law to serve criminal process within this state, to return any convict or inmate on parole into actual custody . . . ." Thus, at the time Petaway claims that he was unlawfully detained pursuant to the breach of peace arrest warrant, he was in fact lawfully in the custody of the Department of Correction pursuant to the Remand to Custody Order for the parole violation. Accordingly, Petaway has failed to state a claim of false imprisonment. The motion for summary judgment is granted on that ground.

### 3. Due Process Claim

Petaway asserts that his detention from September 30, 2003 until October 29, 2003 violated his rights under the Due Process Clause of the Fourteenth Amendment. He alleges that Detective Fitzgerald and Sergeant Costin arrested him on September 29, 2003, but failed to

comply with Connecticut Practice Book §§ 36-3[2], 36-5[3] and 37-1[4] and as a result he was not arraigned in a timely manner in compliance with Connecticut General Statutes § 54-1g(a). He argues that his prolonged detention pursuant to the valid warrant for his arrest on the charges of breach of peace and threatening deprived him of liberty without Due Process of Law in violation of the Fourteenth Amendment. The defendants contend that the statutory requirements regarding arraignment are not applicable until police officials executed the warrant for Petaway's arrest. They argue that police officials did not serve the warrant on September 29, 2003 because of

---

[2] Connecticut Practice Book § 36-3 provides:
The warrant shall be signed by the judicial authority and shall contain the name of the accused person, or if such name is unknown, any name or description by which the accused can be identified with reasonable certainty, and the conditions of release fixed, if any. It shall state the offense charged and direct any officer authorized to execute it to arrest the accused person and to bring him or her before a judicial authority without undue delay.

[3] Connecticut Practice Book § 36-5 provides:
Upon the submission of an application for an arrest warrant by a prosecuting authority, a judicial authority may issue a warrant for the arrest of an accused person if the judicial authority determines that the affidavit accompanying the application shows that there is probable cause to believe that an offense has been committed and that the accused committed it.

[4] Connecticut Practice Book § 37-1 provides:
A defendant who is not released from custody sooner shall be brought before a judicial authority no later than the first court day following arrest. Any defendant who is hospitalized, has escaped, or is otherwise incapacitated shall be presented no later than the next court day following such defendant's medical discharge or return to police custody. A defendant not in custody shall appear for arraignment in person at the time and place specified in the summons or the terms of release, or at such other date or place fixed by the judicial authority.

mishaps involving Records Division employees. A police officer served the warrant on Petaway on October 29, 2003 and he was arraigned the same day.

The Due Process Clause of the Fourteenth Amendment protects persons against deprivations of "life, liberty, or property." U.S. Const. amend. XIV, § 1. Substantive due process protects individuals against government action that "shocks the conscience," see Rochin v. California, 342 U.S. 165, 172 (1952), or, is "arbitrary in the constitutional sense." Collins v. City of Harker Heights, 503 U.S. 115, 128 (1992). Procedural due process ensures that the government utilizes fair procedures. To invoke either protection, Petaway must establish the violation of his right to life, liberty or property. See Wilkinson v. Austin, 545 U.S. 209, 221 (2005).

Petaway claims that mandatory language in Connecticut General Statutes § 54-1g(a) created a liberty interest in his arraignment the day after his arrest. In Hewitt v. Helms, 459 U.S. 460, 471 (1983), the Supreme Court held that states could create a protected liberty interest by enacting regulations "us[ing] language of an unmistakably mandatory character." In 1995, however, the Supreme Court in Sandin v. Conner, 515 U.S. 472, 483-844 (1995), abandoned the language-parsing methodology of Hewitt and held that although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause," such "interests will be generally limited to freedom from restraint [that] . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."

Thus, the mandatory language of Connecticut General Statutes § 54-1g(a) does not in and of itself create a liberty interest in arraignment the day following his arrest. See Watson v. City of New York, 92 F.3d 31, 38 (2d Cir. 1996) (analyzing a similar New York statute governing

12

arraignment procedures and holding that the mandatory language of the statute did not create a liberty interest protected by the Fourteenth Amendment). Furthermore, Petaway's argument that the statute created a substantive liberty interest in being arraigned the day following his arrest is without merit. Connecticut General Statute § 54-1g is a statute governing criminal procedure and only serves to protect the substantive federal liberty interest of freedom from confinement. See Watson, 92 F.3d at 38 ("Arraignment . . . is a procedure that protects the true liberty interest at stake in this case—freedom from confinement."). State procedures designed to protect substantive liberty interests entitled to protection under the federal constitution do not themselves give rise to additional substantive liberty interests. See Olim v. Wakinekona, 461 U.S. 238, 250 (1983) ("Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); Watson, 92 F.3d at 37-38 ("[A] state rule of criminal procedure, such as section 140.20(1), does not create a liberty interest that is entitled to protection under the federal Constitution."); Pugliese v. Nelson, 617 F.2d 916, 924 (2d Cir. 1980) ("'Although a Due Process Clause liberty interest may be grounded in state law that places substantive limits on the authority of state officials, no comparable entitlement can derive from a statute that merely establishes procedural protections.'") (quoting Cofone v. Manson, 594 F.2d 934, 938 (2d Cir. 1979)). Federal law, not state regulations, determines the procedures necessary to protect that liberty interest. See Watson, 92 F.3d at 38.

In Baker v. McCollan, 443 U.S. 137, 143-45 (1979), the Supreme Court held that the detention of an individual for three days on the basis of a facially valid search warrant did not amount to a deprivation of liberty without due process of law—despite the individual's protestations of innocence. The Court hypothesized however that, "depending on what

13

procedures the State affords defendants following arrest and prior to actual trial, mere detention pursuant to a valid warrant but in the face of repeated protests of innocence will after the lapse of a certain amount of time deprive the accused of 'liberty . . . without due process of law'." Id. at 145. Although Petaway was not arraigned for thirty days following his arrest, his liberty was not otherwise restricted because he was in custody pursuant to a valid Remand to Custody Order for a violation of parole. Thus, Petaway has failed to state a claim of a deprivation of his liberty in violation of his rights under the Due Process Clause of the Fourteenth Amendment. The motion for summary judgment is granted on that ground.

### 4. Claims Against City of New Haven

Petaway claims that the City of New Haven is liable because Sergeant Costin and Detective Fitzgerald are policy makers and their failure to comply with Connecticut Practice Book §§ 36-3 and 36-5 resulted in violations of the Constitution and state law. Connecticut General Statutes § 36-3 sets forth the required contents of an Arrest Warrant. It does not require action on the part of police officers. Connecticut General Statutes § 36-5 sets forth the requirements for executing an arrest warrant by a police officer.

In Monell v. Department of Social Services, 436 U.S. 658, 691 (1978), the Supreme Court set forth the test for municipal liability. The municipality may be liable for allegedly unconstitutional acts of a municipal employee if Petaway was subjected to the denial of his constitutional rights as a result of an official policy or custom. See Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995). A municipality cannot be held liable under 42 U.S.C. § 1983 solely on a theory of respondeat superior. See Monell, 436 U.S. at 694-95. There must be "a direct causal link between a municipal policy or custom, and the alleged constitutional

14

deprivation." City of Canton v. Harris, 489 U.S. 378, 385 (1989). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under Monell, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." City of Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). The Supreme Court has held that a single act taken by a municipal employee who, as a matter of state law, has final policymaking authority in the area in which the action was taken, constitutes a municipal policy. See Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986).

The defendants have presented evidence that the warrant for Petaway's arrest on the charges of breach of peace and threatening was not available to Detective Fitzgerald and Sergeant Costin on September 29, 2003, prior to Petaway's transfer to New Haven Correctional Center pursuant to the Remand to Custody Order. Thus, Detective Fitzgerald and Sergeant Costin were precluded from executing the warrant at that time. Furthermore, Detective Fitzgerald and Sergeant Costin have provided affidavits and descriptions of their job responsibilities to demonstrate that they do not have policymaking authority within the New Haven Department of Police Service. Petaway has failed to provide any evidence that the failure to serve and execute the warrant on September 29, 2003 amounted to an unconstitutional policy or custom or that Detective Fitzgerald and Sergeant Costin qualified as policymaking officials. Accordingly, Petaway fails to state a claim of municipal liability against the City of New Haven and the motion for summary judgment is granted on that ground.

### 5. State Law Claims

The defendants argue that the court should decline to exercise supplemental jurisdiction

over any of Petaway's state law claims. I agree.

Supplemental or pendent jurisdiction is a matter of discretion, not of right. See United Mine Workers v. Gibbs, 383 U.S. 715, 715-26 (1966). Where all federal claims have been dismissed before trial, pendent state claims should be dismissed without prejudice and left for resolution by the state courts. See 28 U.S.C. § 1367(c)(3); Giordano v. City of New York, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases). Because I have dismissed or granted the defendants' motion for summary judgment on all federal law claims, I decline to exercise supplemental jurisdiction over Petaway's state law claims.

## Conclusion

Petaway's Motion to Dismiss [**docs. # 54**], Motion to Strike **[doc. # 60]**, Motion for Sanctions [**docs. # 63**] and Motions for Miscellaneous Relief [**docs. # 61**] are **DENIED**. Petaway's Motion to Dismiss [**doc. # 56**] and Motions for Miscellaneous Relief [**docs. ## 57, 69**] are **DENIED** as moot. The defendants' Motion for Summary Judgment [**doc. # 40**] is **GRANTED** with respect to all federal claims. All claims against the New Haven Police Department are **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The court declines to exercise supplemental jurisdiction over Petaway's state law claims. The Clerk is directed to enter judgment in favor of the defendants and close this case.

**SO ORDERED** this 31st day of March 2008, at Bridgeport, Connecticut.

      /s/ Stefan R. Underhill
        Stefan R. Underhill
        United States District Judge